**ACKERMANN & TILAJEF, P.C.**
Craig J. Ackermann, Esq. (State Bar No. 229832)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

**MICHAEL MALK, ESQ., APC**
Michael Malk, Esq. (State Bar No. 222366)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile:  (310) 499-5210

**WALTER HAINES, ESQ.**
United Employees Law Group, P.C. (State Bar No. 71075)
65 Pine Avenue, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Fax: (562) 256-1006

ATTORNEY FOR PLAINTIFFS GEOFFREY PETERSON
and BRANDON MILLER

## UNITED STATES DISTRICT COURT
## EASTER DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY PETERSON and BRANDON MILLER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., and DOES 1 THROUGH 100 <br> Defendants | **Case No.** <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) FAILURE TO REIMBURSE EMPLOYEES FOR REQUIRED BUSINESS EXPENSES [Cal. Labor Code § 2802];** <br><br> **(2) UNFAIR BUSINESS PRACTICES [Cal. Bus. & Prof. Code §§17200, et seq.];** <br><br> **(3)  PRIVATE ATTORNEY GENERALS ACT CLAIM UNDER LABOR CODE SECTION 2600 et seq.; AND** <br><br> **(4) DEMAND FOR JURY TRIAL** |

*Plaintiffs' Class Action Complaint*

Plaintiffs GEOFFREY PETERSON and BRANDON MILLER ("Plaintiffs"), individually and on behalf of all those similarly situated, by and through their counsel, bring this Class Action Complaint ("Complaint") against Defendant Walgreen Co., and Does 1 through 100 (Defendant Walgreen Co. and Does 1 through 100 shall collectively be referred to as "Defendants" and "Walgreens") on personal knowledge with respect to themselves and their own acts, and on information and belief as to other matters, alleges as follows:

## I. NATURE OF ACTION

1. Plaintiffs bring this action on behalf of themselves, on behalf of the California general public, and as a class action on behalf of Defendants' California employees who were employed by Walgreen Co., from November 7, 2008 until the present (the "Class Period") for failure to reimburse employees for business expenses incurred when Defendants' employees travelled in their own personal vehicles on behalf of Defendants to Defendants' other store locations to perform INTERSTORE INVENTORY TRANSFERS (referred to herein as "ISITs") i.e., transporting inventory between stores.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under diversity jurisdiction and the Class Action Fairness Act of 2005 ("CAFA"). The Court has jurisdiction of this case pursuant 28 U.S.C. §§1332(a) and the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), 1453 and 1711-1715 in that the number of members of the proposed plaintiffs class in the aggregate exceeds 10,000 individuals, Plaintiffs are citizens of the state (California) different than Defendant (Illinois), and the amount in controversy exceeds $5,000,000.00 exclusive of costs and interest. Defendant Walgreens is within the jurisdiction of this Court. Defendant Walgreens transacts billions of dollars of business in the State of

California.  Thus, Defendant Walgreens has obtained the benefits of the laws of the State of California and is subject to personal jurisdiction by this court.  Plaintiffs are citizen of the state of California and therefore subject to personal jurisdiction in this court.

3.  Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Brandon Miller's claims, as well as the course of conduct charged herein, occurred in this Fresno County within this District and this Division.

## III. THE PARTIES

4.  Plaintiff Geoffrey Peterson, who at all relevant times referenced herein, resided in San Jose, California, is a former employee of Defendants.  From approximately July 2006 through August 14, 2012, Plaintiff Peterson worked as a service clerk, photo specialist, and Assistant Manager in a number of Defendant's stores in California. Specifically, Plaintiff  Peterson worked (a) through early 2009 as a service clerk and photo specialist at the Walgreens store located at 14400 Harwood in San Jose, California; (b) during 2009 and early 2010 as a service clerk at the Walgreens store located at 5 South 1st Street in San Jose, California; (c) in May 2010, while training to be an Assistant Manager, at three different Walgreens store locations in Milpitas, California; (d) from June 2010 through July 2012 as an Assistant Manager at the Walgreens store located at 1399 San Carlos in San Jose, California; and (e) for the last few weeks of his employment as an Assistant Manager of the Walgreens store located at King and McKenzie Street in San Jose, California.

5.  As a Service Clerk, Photo Specialist, and then as an Assistant Manager, Plaintiff Peterson regularly used his personal vehicle to transfer Defendants' products and supplies from

one Walgreens location to another and, as a result, he incurred expenses in the form of unpaid fuel costs and vehicle wear and tear. He was never reimbursed for these business related expenses, although Defendants had notice that Plaintiff Peterson and Defendants' other Service Clerks, Photo Specialists and Assistant Managers in California ("Class Members") were incurring mileage expenses since movement of inventory was documented in Defendants' computer system as the inventory moved from store to store.

6.  Plaintiff Brandon Miller, who at all relevant times referenced herein, resided in Fresno County, California, is a former employee of Defendants. From March 2006 through February 2011, Plaintiff Miller worked as a service clerk and photo in a number of Defendant's stores in Fresno, California, including store no. 7266 located on Chestnut and Sheppard, as well as the Walgreen Co. store no. 5847 located on 1st and Nees and store no. 9702 located on 1st and Bullard. In 2009 and 2010, Plaintiff Miller worked as a Photo Tech primarily at Walgreen Co. store no. 7266.

7.  As a Service Clerk and then Photo Tech, Plaintiff Miller also used his personal vehicle approximately one time per month (and more frequently during the Holiday season) to transfer Defendants' products and photo supplies from one Walgreens store location to another and, as a result, he incurred expenses in the form of unpaid fuel costs and vehicle wear and tear. He was never reimbursed for these business related expenses, although Defendants had notice that Plaintiff Miller and Defendants' other Service Clerks, Photo Specialists and Assistant Managers in California ("Class Members") were incurring mileage expenses since movement of inventory and supplies was documented in Defendants' computer system as the inventory moved from store to store.

8.  Upon information and belief, Defendant Walgreen Co. is a Corporation doing business in California by operating numerous locations throughout the state. Its headquarters and principal place of business is 200 Wilmot Road Deerfield, Illinois 60015. Defendants employed Plaintiffs and similarly situated persons as Service Clerks, Photo Specialists, Photo Techs, and Assistant Managers in California.

9.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 100, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names under Code of Civil Procedure §474.  Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known. Defendant Walgreen Co. and Does 1-100 shall collectively be referred to as "Defendants."

10. Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  Furthermore, Defendants in all respects acted as the employer and/or joint employer of Plaintiffs and the proposed class.

11. Throughout the Class Period, Defendants employed more than 10,000 employees as service clerks, photo specialists, photo techs, and assistant managers in California who

performed ISITs on behalf of Defendants without receiving reimbursements for their

mileage-related expenses and vehicle wear and tear.

## IV. CLASS ACTION ALLEGATIONS

12. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(3) on

behalf of a class consisting of:

**All current and former service clerks, photo specialists, photo techs, assistant**

**managers and all similarly titled employees employed by Defendants, who were**

**employed in the State of California (hereafter "Class Members") from November 7,**

**2008 through the present (the "Class Period").**

13. <u>Numerosity</u>.  Plaintiffs believe there are more than 10,000 current and former employees

in the Class. Given Defendants' systemic failure to comply with California laws outlined

in this action, the members of the Class are so numerous that joinder of all members is

impractical.

14. <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the members of the Class,

because all Class Members are or were employees of Defendant who sustained damages

arising out of Defendants' failure to reimburse employees for all expenses in discharging

of their duties, including (a) mileage expenses incurred while performing ISITs in their

personal vehicles; (b) mileage expenses incurred while performing bank runs in their

personal vehicles to obtain change; and/or (c) mileage expenses incurred while attending

off-site meetings, such as assistant manager meetings and/or training meetings.

15. <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent the interests

of the Class. Plaintiffs have no conflict of interest with any member of the Class.

Plaintiffs have retained counsel competent and experienced in complex class action

litigation with sufficient financial resources to litigate this case through class certification and trial.

16. <u>Predominance of Common Issues</u>.   Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to Plaintiffs and the Class are:

a. Whether Defendants have a policy or practice of not reimbursing Service Clerks, Photo Specialists, Photo Techs and Assistant Managers for the mileage expenses they incurred driving their own vehicles for work related purposes, including inter-store transfers, bank runs, and/or off-site training meetings for assistant managers or other employees;

b. Whether Defendants violated Labor Code §2802 and the applicable IWC Wage Order by failing to reimburse Service Clerks, Photo Specialists, Photo Techs and Assistant Managers for their out-of- pocket expenses incurred through for the use of personal vehicles in the discharge of their job duties;

c. Whether Defendants violated §17200 et seq. of the Business & Professions Code by failing to provide reimbursement of all mileage-related expenses to Assistant Managers, Service Clerks, Photo Techs and Photo Specialists employed in California from November 7, 2008 through the present;

d. Whether Plaintiffs and other similarly situated aggrieved employees are entitled to recover penalties under California's Private Attorney Generals Act, Labor Code section 2699 et seq. based on Defendants failure to reimburse Service Clerks, Photo Specialists, Photo Techs and Assistant Managers for their mileage-related

expenses incurred while performing ISITs, bank runs for change, and/or while attending off-site training meetings at other store locations; and

e.  Whether Plaintiffs and the members of the proposed class are entitled to equitable relief pursuant to Business & Professions Code §17200, et seq.

17.  Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class members are readily identifiable from Defendants' employee rosters and/or payroll records.[1]

18.  Defendants' actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

19.  Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendants.

---

[1] Under California law, Defendants must keep payroll records for all employees for at least two years. See, Cal. Labor Code §1174(d).  Under federal law, Defendants must generally keep payroll records for at least three years. See, 29 C.F.R. Part 516 et seq.

*Plaintiffs' Class Action Complaint*

## V. <u>FACTUAL ALLEGATIONS</u>

20. Plaintiffs repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

21. Labor Code §2802 requires employers to indemnify employees for all necessary expenditures incurred by employees in the discharge of their duties.

22. Plaintiffs and other members of the Class were employed as Assistant Managers, Service Clerks, Photo Techs and Photo Specialists in California by Defendants at various times during the Class Period. At any one time during the Class Period, Defendants employed thousands of full-time Assistant Managers, Service Clerks, Photo Techs and Photo Specialists at its approximately 350 locations in California.

23. At all relevant times herein, Plaintiffs and Class Members utilized their own vehicles on a regular basis (with a frequency of approximately once or twice per month) to travel between the stores at which Plaintiffs and Class Members were based and Defendants' other locations to perform ISITs, on behalf of Defendants. When customers requested an item that was not in stock at the employee's home store, Plaintiffs and Class Members would use Defendants' computer system to locate the item at another of Defendants' nearby locations. While all of Defendants' stores used the KPI system to identify inventory for ISITs, some stores used a method called the "Buddy System," wherein District Managers advised Managers and Assistant Managers to locate merchandise at one of Defendants' stores in close proximity to an employee's home store. Whether or not the "Buddy System" i.e., whether or not the ISITS were performed at the store closest to each manager's home store location or not, all Class Members performed ISITs without mileage reimbursement.

24. Once the item was located in Defendants' computer system, the employee typically called Defendants' pick-up location to verify that the merchandise was in stock. If so, the employee used his or her password to gain access to Defendants' computer system to reserve the merchandise by removing the item to be retrieved from the pick-up location's computer inventory, and charging the item to the employee's home store.  In addition, Plaintiffs and the Class Members utilized Telxon inventory scan guns to input information necessary to perform an inter-store transfer.

25. Walgreens' inter-store transfers were called "interstores" and were documented in Interstore Reports that were generated from information inputted through employees' Telxon inventory scan guns, including the date of the transfer, the item or product needed, the quantity needed, the name of the approving manager for the transfer, the store number for the sending store location, and the store number for the receiving store location.  Through these Interstore Reports approved by Defendants' managers and also through its computer database information, Defendants were aware that Plaintiffs and the Class Members were routinely performing ISITs.  Defendants were also aware that that these ISITs were being done with employees' personal vehicles since  employees were not permitted to use UPS or other overnight shipping services to ship items to other locations, except for extraordinarily large items, and Walgreens provided no trucks or vehicles for employees to use to perform these ISITs.  Even with respect to extraordinarily large items where Walgreens allowed employees to use UPS Overnight for shipping the item, Walgreens did not reimburse employees for their mileage expenses incurred while driving to and from the off-site UPS location in their personal vehicles with the item that needed to be shipped.

26. As a result of the computer inventory transfer and the information gathered by the Telxon inventory scan guns, Defendants' uniform computer system generated paperwork at the pick-up location to prepare the item for transfer. As noted, at least once per month, Plaintiffs and Class Members used their personal vehicle to retrieve Defendants' merchandise from Defendants' other location and signed for it. Additional paperwork accompanied the inventory items to the employee's home store where a manager used his password on the AS400 system to confirm that the transfer was complete, and Defendants' merchandise was received at the employee's home store.

27. In addition, Plaintiffs and Class Members were required to use their personal vehicles to travel between the stores at which Plaintiffs and Class Members were based and Defendants' other locations to replenish vital business supplies, such as plastic bags and register tape, as the inventory of these necessary business items became low or even completely depleted in the home stores of Plaintiffs and the Class Members. Plaintiffs and Class Members were compelled to use their personal vehicles to retrieve these supplies from other stores because there was no imminent delivery of corporate supplies, yet these supplies were essential to continue to transact business on behalf of Defendants. Defendants failed to reimburse Plaintiffs and Class Members for these incurred business related expenses despite their actual and/or constructive knowledge that Plaintiffs and the Class Members were using their personal vehicles for these trips and thus incurring expenses for fuel and vehicle wear and tear.

28. Plaintiffs, as a Service Clerk, Photo Specialist, Photo Tech and Assistant Manager, and Class Members, were authorized and/or required by Defendants to travel during their scheduled shifts in their personal vehicles to transfer merchandise and/or supplies from

*Plaintiffs' Class Action Complaint*

the pick-up location to their home store's site. Plaintiffs and Class Members regularly bore the mileage expense associated with these ISITs without reimbursement from Defendant.  The transfer of these items and supplies was necessary to the function of Defendants' business.

29. In addition, as an Assistant Manager, Plaintiff Peterson and other Class Members who are and were Assistant Managers attended off-site meetings at other Walgreens store locations, and traveled to and from such training meetings in his and their personal vehicles without receiving any reimbursements for mileage expenses and vehicle wear and tear.  The training meetings attended by Plaintiff Peterson and other Assistant Managers took place approximately once per quarter.  Based on the observations of its managers in charge of running the training meetings and the fact that Walgreens actually paid its employees for their working time spent traveling to and from training meetings and for the time spent attending training meetings, Walgreens knew or should have known that its Assistant Managers were attending training meetings on a quarterly basis and were travelling there in their personal vehicles, but Walgreens nevertheless never reimbursed its Assistant Managers for their mileage-related expenses incurred in attending these off-site training meetings in their personal vehicles.

30. Similarly, Defendants knew or should have known that its Assistant Managers, including Plaintiff Peterson made runs to the bank in their personal vehicles in order to obtain change for their Walgreens store.  When Assistant Managers went to obtain change for their store, they completed a "Change Request Form", thereby notifying Walgreens of these trips to the bank.  Nevertheless, despite this knowledge, neither Plaintiff Peterson nor Defendants' other Assistant Managers received reimbursement for their gas mileage

expenses incurred while performing their job duty of obtaining change for their Walgreens store location.

31. Plaintiffs and the Class Members were not advised by Defendants' managers and upper management, who were aware of their use of their personal vehicle for ISITs, training meetings and change runs to the bank, to request mileage reimbursement for inter-store transfers, attendance at off-site training meetings and for bank runs to obtain change.

32. Through Defendants' policies and failure to properly train Plaintiffs and Class Members in reimbursement practices, and through Defendant's failure to affirmatively reimburse Plaintiffs and Class Members for their personal mileage expenses known by Defendants to have been incurred during the performance of the job duties of Plaintiffs and Class Members, Defendants required and/or permitted Plaintiffs and the Class Members to bear the burden of paying for the use of their personal vehicles on behalf of Defendants without reimbursement.

33. As a result, Defendants are liable to Plaintiffs and the Class Members for the amounts expended by Plaintiffs and the Class Members in fuel expenses and vehicle wear and tear, plus interest, penalties, and attorneys' fees and costs pursuant to Labor Code §2802.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

## FAILURE TO REIMBURSE FOR EXPENSES

## [Calif. Labor Code §2802]

34. Plaintiffs re-allege and incorporate by reference the information set forth in all preceding paragraphs, as though fully set forth and alleged herein.

35. Labor Code §2802 requires employers to indemnify employees for all necessary expenditures incurred by employees in the discharge of their duties.

36. At all relevant times herein, Defendants were aware that Plaintiffs and the Class Members were using their personal vehicles for ISITs, bank runs to obtain change and/or to attend off-site training meetings, but failed to indemnify Plaintiffs and Class Members for their business related expenses incurred therein in accordance with Labor Code §2802. Plaintiffs are informed and believe and thereon allege that at all relevant times within the applicable limitations period, Defendant maintained a practice of not reimbursing employees for the mileage expenses they incurred driving their own vehicles for work related purposes, i.e., for ISITs, for change runs to the bank and to attend training meetings at other Walgreens store locations.

37. As a result of Defendants' conduct, Plaintiffs and the Class Members suffered damages in an amount, subject to proof, to the extent they were not reimbursed for all the mileage expenses they incurred driving their own vehicles for work related purposes.

38. Pursuant to Labor Code §2802, Plaintiffs and Class Members are entitled to recover the full amount of their un-reimbursed business expenses, reasonable attorney's fees and costs of suit.

## SECOND CAUSE OF ACTION

### UNFAIR/UNLAWFUL BUSINESS PRACTICES

### [Cal. Bus. & Prof. Code §§17200, et seq.]

39. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

40. Section 17200 of the California Business & Professions Code prohibits any unlawful, unfair, or fraudulent business practices.

41. Wage and hour laws express fundamental public policy.  Providing employees with proper reimbursement of expenses and providing employees with wages upon termination/resignation are fundamental public policies of this State and of the United States.  Labor Code §90.5(a) articulates the public policies of this State to enforce vigorously minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower their standards.

42. Defendants have violated statutes and public policy.  Through the conduct alleged in this Complaint, Defendants, and each of them, have acted contrary to public policy, have violated Section 2802 of the Labor Code, and have engaged in other unlawful and unfair business practices in violation of Business & Professions Code §17200, et seq., depriving Plaintiffs, others similarly situated, and all interested persons of rights, benefits, and privileges guaranteed to all employees under law.

43. Defendants, as herein alleged, either knew or in the exercise of reasonable care should have known that their conduct challenged herein was unlawful.  As such it is a violation of §17200 et seq. of the Business & Professions Code.

44. Defendants, by engaging in the conduct herein alleged, either knew or in the exercise of reasonable care should have known that the conduct was unlawful.  As such it is a violation of §17200 et seq. of the Business & Professions Code.

45. As a proximate result of the above-mentioned acts of Defendants, Plaintiffs and others similarly situated have been damaged in a sum as may be proven.

46. Pursuant to Business and Professions Code §17203, Plaintiff and the Class Members are entitled to restitution of monies rightfully belonging to them for business related expenses that Defendants failed to reimburse and wrongfully retained by means of its unlawful and unfair business practices.

### THIRD CAUSE OF ACTION

### PRIVATE ATTORNEY GENERAL ACT CLAIMS

### FOR PENALTIES, ATTORNEYS' FEES AND COSTS

### [CAL. LABOR CODE §§ 2698, 2699]

47. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

48.  Under the Labor Code Private Attorney General Act ("PAGA"), Labor Code Sections 2698-99, private parties may recover civil penalties for violations of the California Labor Code and applicable IWC Wage Orders. These penalties are in addition to any other relief available under the Labor Code and the applicable IWC Wage Order.

49.  As set forth above, Defendants have committed violations of the California Labor Code and applicable IWC Wage Orders, and are entitled to civil penalties.  Plaintiffs and the Class Members are entitled to civil penalties for their necessary business related expenses incurred therein in accordance with Labor Code §2802.

50.  Section 2699.3(a)(1) of the Labor Code provides that, prior to bringing suit, an aggrieved employee "shall give written notice by certified mail to the Labor and Workforce Development Agency ("LWDA") and the employer of the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation."  Pursuant to Labor Code § 2699.3, on October 31, 2012, Plaintiff Peterson

gave notice to the Labor and Workforce Development Agency and Walgreens of the specified Labor Code provisions alleged to have been violated herein. Labor Code § 2699.3 (2) (a) requires the LWDA to notify the employee or representative within 30 calendar days of the date of the PAGA notice that it does not intend to investigate. Upon receipt of the notice or if no notice is received within 33 calendar days of the PAGA notice, the aggrieved employee can pursue a civil action in court and/or pursue the PAGA claim in an existing lawsuit. Accordingly, as of December 3, 2012, all administrative prerequisites to the pursuit of Plaintiff's PAGA claim herein will have been satisfied.

51.  Under PAGA, Plaintiff and the Class Members are entitled to recover the maximum civil penalties permitted by law from Defendants for its violations of the California Labor Code and the applicable California IWC Wage Order, for each pay period during which a violation of Section 2802 of the Labor Code occurred, as alleged in this Complaint. Plaintiffs and members of the Class are also entitled to recover their attorneys' fees and costs under Labor Code Section § 2699.

## VII. DEMAND FOR JURY TRIAL

52. Plaintiffs hereby demand trial by jury on their individual and class-wide claims stated herein against Defendants.

## VIII. PRAYER FOR RELIEF

53. WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray for judgment against Defendants as follows:

An Order than this action may proceed and be maintained as a class action on behalf of the Class;

a)       On the First Cause of Action:

*Plaintiffs' Class Action Complaint*

(1)     A declaratory judgment that Defendants violated California Labor Code Section §2802;

(2)     Compensatory damages in the amount of Plaintiffs' and the Class Members' out of pocket expenses and/or reimbursement of monies incurred while performing Defendants' business related duties plus interests, costs and attorney's fees to the fullest extent allowable under the law; and

(3)     An award to Plaintiffs and the Class members for their attorneys' fees and costs of suit to the extent permitted by law, including, but not limited to, Cal. Code of Civil Procedure §2802(c).

b)    <u>On the Second Cause of Action:</u>

(1)     A declaratory judgment that Defendants violated California Business and Professions Code §17200;

(2)     Restitution of unpaid reimbursements for mileage to Plaintiffs and the Class Members, including, but not limited to, the relief permitted pursuant to Labor Code §2802; and

c)    <u>On the Third Cause of Action</u>

(1)     A civil penalty against Defendants in the amount of $100 for the initial violation and $200 for each subsequent violation as specified in Labor Code § 2699(f)(2) based on Defendants' violation of Labor Code 2802;

(2)     All penalties available under the Private Attorneys General Act;

(3)   An award of reasonable attorneys' fees against Defendants as specified in Labor Code § 2699(g)(1), for all the work performed by the undersigned counsel in connection with the PAGA claims; and

(4)   An award of all costs incurred by the undersigned counsel for Plaintiffs in connection with Plaintiffs and the Class Members' PAGA claim against Defendants, as provided for in Labor Code § 2699(g)(1);

d)   Award of prejudgment and post judgment interest;

e)   An award providing for payment of costs of suit; and

f)   For all other relief as this Court deems proper.

Dated:  November 7, 2012

Respectfully submitted,

CRAIG ACKERMANN, ESQ.
MICHAEL MALK, ESQ.
WALTER HAINES, ESQ.

By: _____
      Craig Ackermann
      Attorneys for Plaintiffs and the Class